# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

FILED BY ___MP___ D.C.
Dec 28, 2023
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           PLAINTIFF,<br><br>                v.<br><br>SHRAY GOEL,<br><br>           DEFENDANT(S) | CASE NUMBER: **23-4508-MJ-GOODMAN**<br>2:23-cr-00623-WLH<br><br>**WARRANT FOR ARREST** |

To:     UNITED STATES MARSHAL AND ANY AUTHORIZED UNITED STATES OFFICER

**YOU ARE HEREBY COMMANDED** to arrest **SHRAY GOEL**

and bring him forthwith to the nearest Magistrate Judge to answer an Indictment charging him with Wire Fraud and Aggravated Identity Theft,

in violation of Title 18, United States Code, Section(s) 1343 and 1028A.

Kiry K. Gray
NAME OF ISSUING OFFICER

Clerk of Court

*(signature)*
SIGNATURE OF DEPUTY CLERK

December 13, 2023, Los Angeles, CA
DATE AND LOCATION OF ISSUANCE

**Honorable Jacqueline Chooljian**
By: _____
NAME OF JUDICIAL OFFICER

**RETURN**

THIS WARRANT WAS RECEIVED AND EXECUTED WITH THE ARREST OF THE ABOVE-NAMED DEFENDANT AT (LOCATION)

DATE RECEIVED                                  NAME OF ARRESTING OFFICER

DATE OF ARREST                                 TITLE

**ADDITIONAL DEFENDANT INFORMATION**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, PLAINTIFF, v. SHRAY GOEL, DEFENDANT(S) | CASE NUMBER: <br><br> **WARRANT FOR ARREST** |
|---|---|

| RACE: | SEX: | HEIGHT: | WEIGHT: | HAIR: | EYES: | OTHER: |
|---|---|---|---|---|---|---|
| | | | | | | |

| DATE OF BIRTH: <br><br> **1988** | PLACE OF BIRTH: | SOCIAL SECURITY NO.: | DRIVER'S LICENSE NO. | ISSUING STATE |
|---|---|---|---|---|

| ALIASES: | SCARS, TATTOOS OR OTHER DISTINGUISHING MARKS: |
|---|---|

| AUTO YEAR: | AUTO MAKE: | AUTO MODEL: | AUTO COLOR: | AUTO LICENSE NO.: | ISSUING STATE |
|---|---|---|---|---|---|

| LAST KNOWN RESIDENCE: | LAST KNOWN EMPLOYMENT: |
|---|---|

FBI NUMBER:

ADDITIONAL INFORMATION:

| INVESTIGATIVE AGENCY NAME: <br><br> **FBI, FDIC-OIG** | INVESTIGATIVE AGENCY ADDRESS: |
|---|---|

NOTES:

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>                           PLAINTIFF,<br><br>               v.<br><br>SHRAY GOEL,<br><br>                          DEFENDANT(S) | CASE NUMBER:<br><br><br>**WARRANT FOR ARREST** |

FILED BY \_\_\_\_MP\_\_\_\_D.C.
Dec 28, 2023
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

FILED
CLERK, U.S. DISTRICT COURT
12/13/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: \_\_\_\_jb\_\_\_\_ DEPUTY

23-4508-MJ-GOODMAN

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2023 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> SHRAY GOEL, <br><br> Defendant. | CR No. 2:23-cr-00623-WLH <br><br> **I N D I C T M E N T** <br><br> [18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft; 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

COUNTS ONE THROUGH THIRTEEN

[18 U.S.C. §§ 1343, 2]

A. INTRODUCTORY ALLEGATIONS

1. At times relevant to this Indictment:

    a. Defendant SHRAY GOEL resided in the Central District of California and Milwaukee, Wisconsin, among other places.

    b. With others working with him and at his direction, defendant GOEL owned and operated a short-term property rental business under various names including Abbot Pacific LLC, marketing properties for short-term rental on Airbnb, Inc. ("Airbnb"),

HomeAway, Inc. (dba HomeAway.com or Vrbo.com) ("Vrbo"), and other online property rental platforms.

  c. Defendant GOEL and others working with him and at his direction owned and leased properties throughout the United States for the rental business, including properties in Los Angeles, California; Malibu, California; Marina Del Rey, California; Denver, Colorado; Chicago, Illinois; Davenport, Florida; Bloomington, Indiana; Cleveland, Ohio; Austin, Texas; Dallas, Texas; Nashville, Tennessee; and Milwaukee, Wisconsin, among other places.  By 2019, they were managing nearly 100 properties across the United States.

  d. Airbnb was an online platform and marketplace for short-term and long-term property rentals and experiences, facilitating connections between hosts and guests.  With respect to short-term rentals:

    i. Airbnb's terms of service governed access to and use of the Airbnb platform.  Among other terms, the terms of service included terms specific for hosts and terms applicable to all listings created through the Airbnb platform.

    ii. Airbnb's terms of service required users, both hosts and guests, to register an account (which required agreement to the terms of service) in order to use features of the platform including publishing or booking a listing; all users were required to provide accurate, current, and complete information during the registration process and to keep their information up to date at all times.

    iii. Airbnb's terms of service prohibited users from assigning or transferring their account to anyone else or disclosing account credentials to any third party.  While the Airbnb platform

2

had features to allow individual hosts to add other users as co-hosts, such that other users could take certain actions in relation to the listings, such as accepting booking requests, messaging guests, and updating listing fees and calendar availability, the host remained solely responsible and liable for any listings published on the platform for their account.

iv. Airbnb's terms of service prohibited users from using the platform to publish, submit, or transmit anything that was deceptive, fraudulent, false, or misleading (either directly or by omission or failure to update information).

v. Airbnb's terms of service required hosts to comply with all laws, rules, and regulations applicable to their listings including laws, rules, and regulations requiring hosts to obtain licenses, permits, or registrations from state or local authorities.

vi. Airbnb's terms of service required hosts to provide accurate information concerning properties being listed, including the description of the properties, their location, and their calendar availability, that is, the availability of the properties for rental on listed dates; hosts were required to keep listing information (including calendar availability) up to date at all times; multiple bookings of the same property for the same or overlapping dates ("double bookings") were not allowed.

vii. Under Airbnb's terms of service, once a guest requested to book a listing at a published price, the host could not ask the guest to pay a higher price, and once a host accepted a booking or a booking was pre-approved, the host had a legally binding

agreement with the guest to host the guest at the booked listing on the booked dates for the published price.

viii. Following a confirmed booking, Airbnb would send the guest a booking confirmation and collect payment for the reservation, which Airbnb would hold until 24 hours after the guest checked into the listing, at which time Airbnb would release the payment to the host.

ix. A confirmed booking granted the guest a limited license to enter, occupy, and use the booked listing for the duration of the booked reservation. Hosts were not permitted to cancel confirmed bookings except as authorized by Airbnb's policies (for example, legitimate concerns about a guest's behavior, as discussed further below, or extenuating circumstances, as defined in Airbnb's policies).

x. If a host cancelled outside of Airbnb's policies, Airbnb could publish an automated review on the listing showing the host cancellation and impose a cancellation fee on the host's account. Further, if a host canceled a confirmed booking, absent legitimate concerns about a guest's behavior, the guest would be entitled to a full refund.

xi. Hosts could establish house rules including limits on the number of guests and extra charges for additional guests, and a host could cancel a reservation if the host had legitimate concerns about a guest's behavior, including unauthorized parties, and in such a situation, a guest might not be entitled to a refund.

xii. Hosts could elect to have a strict cancellation policy apply to their listings such that, absent extenuating

4

circumstances or in some instances a limited window following advanced bookings, a guest would not receive a refund for canceling a confirmed reservation.  A host could voluntarily agree to give a guest a refund if the guest cancelled a listing outside a host's cancellation policy, but the host was not obligated to do so.

    xiii. Following a completed reservation, guests and hosts could rate each other and post reviews of their experience, and these ratings and reviews were visible to other users of the Airbnb platform.

    xiv. Hosts that cancelled confirmed reservations could receive negative guest ratings and reviews, and hosts that continually cancelled confirmed reservations could also have their payouts cancelled and their listings suspended and ultimately removed from the platform.

B. <u>THE SCHEME TO DEFRAUD</u>

  2. Beginning no later than in or about January 2018, and continuing until at least in or about November 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendant GOEL, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud Airbnb, Vrbo, and other online property rental platforms (the "rental platforms"), and guests booking properties through the rental platforms, as to material matters, and to obtain money and property from such victims by means of materially false and fraudulent pretenses, representations, and promises and the concealment of material facts.

  3. The scheme operated in substance as follows:

a. Defendant GOEL operated a double-booking-bait-and-switch scheme on the rental platforms, secretly double-booking properties and then inventing fake last-minute excuses for cancelling overbooked guests or tricking them into switching to inferior replacements.

b. Defendant GOEL and others working with him and at his direction profited from the scheme by running a secret bidding war to rent properties to the highest bidder, by keeping all of their properties in any given area at maximum capacity, and by otherwise being able to choose among overbooked guests, and they often refused to agree to refunds for guests who were entitled to them.

c. To carry out the scheme, defendant GOEL and others working with him and at his direction would post, and cause to be posted, listings of properties for short-term rental on the rental platforms, creating listings throughout the course of the scheme and using other listings they had created dating back to at least 2016.

d. In posting listings, defendant GOEL and others working with him and at his direction used false and misleading representations concerning the identities of the hosts, the addresses of the properties, the availability of the properties for rental on listed dates, the reserved status of properties for guests with confirmed bookings, the condition of the properties, and the veracity and completeness of the reviews of the properties and hosts, among other false and misleading representations.

e. Defendant GOEL and others working with him and at his direction would post multiple listings of the same property, listing the property at different prices for the same date to try to maximize the price they could charge for each property on a given date, and

trying to maximize occupancy rates on a given date by using overbooked properties to fill open properties in the same area, including using multiple listings of frequently-booked properties as bait to trick guests into booking those properties, intending to switch overbooked guests to less frequently-booked properties in the same area.

f. Defendant GOEL and others working with him and at his direction used fake host names and in certain instances other people's identities and identification documents (the "fake hosts" or "fake host accounts"), creating these fake host accounts throughout the course of the scheme and using other fake host accounts they had created dating back to at least 2015. They used the fake host accounts to conceal their own identities, to double-book properties, to hide negative reviews by de-listing and re-listing properties, to protect against properties being removed from the rental platforms (by having properties listed through multiple hosts), and to continue to list properties after they had been banned from Vrbo in 2015 because of repeated host cancellations and guest complaints.

g. The fake host accounts included: "Alex & Brittany," "Annie & Chase," "Becky & Andrew," "Jess & Tyler," "Kelsey & Jean," "Kris & Becky," "Rachel & Pete," "Sarah & Jason," "Stephen F.," and "Ryan J.," among other names. Defendant GOEL and others working with him and at his direction would pretend to be the fake hosts in communications with guests and the rental platforms.

h. In at least some instances, defendant GOEL and others working with him and at his direction listed or caused to be listed addresses that had no residential structure, were unaffiliated with the co-schemers, or did not exist at all (insofar as the addresses

7

did not correspond to any address in the relevant county records system and could not be found through any widely used Global Position System (GPS) such as google.com) ("fake addresses"). The use of fake addresses helped the co-schemers create duplicate listings for a single property, evade local rules and regulations governing short-term rentals, and control who had access to properties.

   i. Defendant GOEL and others working with him and at his direction would post misleading positive reviews of their listings by booking a listing using a fake host account other than the one being used to list a property, and using the fake host account that booked the listing, they would post a misleading positive review, falsely indicating that the review was from an unaffiliated, third-party guest who had stayed at the property.

   j. In at least some instances, defendant GOEL and others working with him and at his direction did not update a property's calendar availability after the property had been booked, and they continued to advertise the booked property as being available for rental on the already-booked dates, both by listing the property through multiple listings on a single rental platform and by cross listing the property on different rental platforms. The duplicate listings allowed defendant GOEL and others working with him and at his direction to rent the same property to multiple guests for the same or overlapping dates – i.e., to double book the property.

   k. Defendant GOEL and others working with him and at his direction concealed the double bookings and the double-booking practice of the business, hiding the fact that properties were double-booked and/or still being listed after being booked, knowing that prospective guests would not reserve properties and pay for

8

reservations if they knew that the properties had been or could be double-booked, and that the rental platforms might prohibit them from continuing to use the rental platforms if the double-bookings were discovered.

l. After a listing had been booked, defendant GOEL and others working with him and at his direction chose which (if any) guest to host, often selecting the guest who had booked the property at the highest price or who otherwise had the most profitable reservation, and, for an overbooked guest or a guest they did not otherwise host or want to host, they would do one of the following:

i. They provided the guest with a false excuse as to why a booked property was unavailable, and then: (1) cancelled the reservation, but resisted the assessment of any cancellation fees; (2) convinced the guest to move to an alternative property by falsely representing the alternative was comparable or an upgrade, and denied refunds if guests complained; or (3) lied to the rental platforms about the guest or the reservation to keep money from guests entitled to refunds.

ii. They convinced the guest to cancel the reservation under false pretenses including promising the guest a full refund when, in at least some instances, they lied to the rental platforms about the guest or the reservation including lies about promised refunds.

iii. They stopped responding to the guest prior to check in, and in at least some instances, they lied to the rental platforms about the guest or the reservation, including falsely telling the rental platforms the guest had stayed in the booked property.

9

m. If guests complained about a property or posted a negative review, defendant GOEL and others working with him and at his direction sometimes posted and caused to be posted false negative reviews about the guests, and they would remove or de-activate the negatively reviewed listing and use other listings of the same property or re-list the property with a new listing profile or an entirely new host profile.

n. Defendant GOEL would pressure, threaten, and insult Airbnb customer service representatives and demand to be transferred to another representative or a supervisor when representatives indicated they were going to give refunds over defendant GOEL's objections, which sometimes resulted in representatives denying refunds to which guests were entitled, or transferring defendant GOEL to a representative or supervisor who might deny the refund.

o. The co-schemers used the lies and misrepresentations to obtain payments from guests who would not have otherwise booked a reservation for one of the co-schemers' properties. The lies and misrepresentations also helped the co-schemers keep money from guests entitled to refunds, to avoid cancellation fees and negative reviews, and to keep the scheme going in the various ways discussed above. The last-minute nature of the cancellations also caused guests and the rental platforms to suffer losses when guests were forced to find last-minute alternative accommodations.

p. In furtherance of the scheme, defendant GOEL and his co-schemers used the following properties, among others, and the following fake property addresses, among others, involving reservations booked by the following guests, among others:

10

| Real Property Address | Fake Property Address(es) | Guests |
|---|---|---|
| 1193 Angelina Street, Austin, TX 78702 | | J.Cof., P.C., E.I., K.S. |
| 1342 North Greenview Avenue, Chicago, IL 60642 | | T.C., S.W. |
| 1612 West Beach Avenue, Chicago, IL 60622 | 1600 West Beach Avenue, Chicago, IL 60622 | K.F., S.P. |
| 1656 West Erie Street, Chicago, IL 60622 | 1650 West Erie Street, Chicago, IL 60622 | C.A., J.Cou., H.H., J.K., C.N., M.S. |
| 1701 4th Avenue North, Nashville, TN, 37208 | 1650 5th Avenue North, Nashville, TN, 37208 | A.H., A.S., L.S., C.V. |
| 18922 Pacific Coast Highway, Malibu, CA 90265 | 20220 Pacific Coast Highway, Malibu, CA 90265 | M.B., R.B., S.B., T.G., J.H., E.N., P.L., C.S., A.W., K.W., P.Z. |
| 20006 Pacific Coast Highway, Malibu, CA 90265 | 20000 Pacific Coast Highway, Malibu, CA 90265 | J.B., L.D., M.K., S.M. |
| 20466 Pacific Coast Highway, Malibu, CA 90265 | | M.B., M.F., L.M., J.S. |
| 20648 Pacific Coast Highway, Malibu, CA 90265 | | C.B., G.J., B.L., E.N., J.T. |
| 20650 Pacific Coast Highway, Malibu, CA 90265 | | B.B., J.Pat., J.Pon., R.H.p |
| 209 Montreal Street, Los Angeles, CA 90293 | | A.M., B.P., S.R., R.C. |
| 2737 North Kenmore Avenue, Chicago, IL 60614 | 2700 North Kenmore Avenue, Chicago, IL 60614 | A.C., P.L. |

| Real Property Address | Fake Property Address(es) | Guests |
|---|---|---|
| 2272 North Lincoln Avenue, Chicago, IL 60614 | 2270 North Lincoln Avenue, Chicago, IL 60614 | J.Cas., M.D. |
| 3522 Shoshone Street, Denver, CO 80211 | | S.A. |
| 521 San Juan Avenue, Los Angeles, CA 90291 | | T.S., K.L. |
| 615 Brooks Avenue, Los Angeles, CA 90291 | | T.G., J.Per. |
| 6304 Vista Del Mar, Los Angeles, CA 90293 | | J.G., D.L., M.F. |
| 915 26th Street, Denver, CO 80205 | 2500 Curtis Street, Denver, CO 80285 | D.C., F., W.N., L.M. |
| 842 North Wood Street, Chicago, IL 60622 | 825 North Wood Street, Chicago, IL 60622; 850 North Wood Street, Chicago, IL 60622; 925 North Wood Street, Chicago, IL 60622; 942 North Wood Street, Chicago, IL 60622 | A.C., M.D., M.G., D.W. |

q. In 2018 and 2019, in the course of the scheme and in furtherance of it, defendant GOEL and others working with him booked more than 10,000 reservations through Airbnb, receiving more than $7 million in payouts on those reservations; they booked additional and sometimes conflicting reservations through Vrbo and received more than $1.5 million in additional payouts from those reservations.

12

C.   USE OF INTERSTATE WIRES

4. On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, for the purpose of executing the above-described scheme to defraud, defendant GOEL and his co-schemers, together with others known and unknown to the Grand Jury, aiding and abetting each other, transmitted and caused the transmission of the following items by means of wire communication in interstate commerce:

| COUNT | DATE | INTERSTATE WIRING |
|---|---|---|
| ONE | 12/14/2018 | Communication on the Airbnb platform from Airbnb to guest T.S.: "We received a message from Rachel & Pete that their guest refused to leave the property...." |
| TWO | 12/14/2018 | Communication on the Airbnb platform from Airbnb to guest K.L.: "...we do understand that there w[as] inconvenience on your part as well. However, since your reservation is not affected, then we can't proceed with any compensation..." |
| THREE | 02/15/2019 | Communication on the Airbnb platform from Airbnb to guest M.B.: "...I am sorry to hear that your host needs to cancel your stay..." |
| FOUR | 04/27/2019 | Communication on the Airbnb platform from defendant GOEL and others working with him to guest J.Pat.: "** You are located at: 20650 Pacific Coast Highway Malibu, CA 90265 **Check in 4pm **Check out 10am . . ." |
| FIVE | 06/20/2019 | Communication on the Airbnb platform from defendant GOEL and others working with him to guest T.G.: "Our Address:  **18922 Pacific Coast Highway, Malibu, CA, 90265** ** Check in 4pm ** . . . " |
| SIX | 07/01/2019 | Communication on the Airbnb platform from defendant GOEL and others working with him to guest M.F.: "You are located at : ** 6304 Vista Del Mar, Playa Del Rey, CA, 90293** **Check in 4pm **Check out 10am . . ." |
| SEVEN | 07/03/2019 | Communication on the Airbnb platform from defendant GOEL and others working with him to guest S.M.: "just tried calling you - what is the best number to reach you on." |

13

| COUNT | DATE | INTERSTATE WIRING |
|---|---|---|
| EIGHT | 07/09/2019 | Communication on the Airbnb platform from defendant GOEL and others working with him to guest M.K.: "hey [M.] - what is the best number to reach you on? I'm having a bit of a plumbing problem so i wanted to reach out to you proactively !" |
| NINE | 07/14/2019 | Communication on the Airbnb platform from Airbnb to guest S.B.: "I just want to let you know that [the host] can't promise that the toilet will be fixed today . . . He mentioned that he already contacted a lot of plumbers but unfortunately no one responded. He wants to cancel the reservation . . ." |
| TEN | 08/09/2019 | Communication on the Airbnb platform from defendant GOEL and others working with him to guest E.N.: "You are located at: ** 20648 Pacific Coast Highway Malibu, CA 90265 ** **Check in 4pm **Check out 10am . . ." |
| ELEVEN | 10/08/2019 | Wires sent through the Airbnb platform associated with a reservation booked by J.Pon. for 20650 Pacific Coast Highway, Malibu, CA 90265, with host "Stephen F" |
| TWELVE | 10/12/2019 | Communication on the Airbnb platform from defendant GOEL and others working with him to guest B.B.: "Trying to call you, what[']s the best number to reach you?" |
| THIRTEEN | 10/15/2019 | Communication on the Airbnb platform from defendant GOEL and others working with him to guest J.Pon.: "[The refund] was sent" in response to the message: "I just spoke with Airbnb, they did not have the record of you requested to give me full refund. Please straighten out this issue immediately. It has been 3 days since I was supposed to stay at your property, in which my family was left stranded due to your plumbing issue." |

14

## COUNTS FOURTEEN AND FIFTEEN

[18 U.S.C. §§ 1028A(a)(1), 2(b)]

5. The Grand Jury realleges paragraphs 1, 3, and 4 of this Indictment here.

6. On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant GOEL knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, a means of identification that defendant GOEL knew belonged to another person, namely, the names of the individuals identified below by their initials, during and in relation to the offense of Wire Fraud, a felony violation of Title 18, United States Code, Section 1343, as charged in the counts of this Indictment identified below:

| COUNT | DATES | MEANS OF IDENTIFICATION | PREDICATE FELONY VIOLATION |
|---|---|---|---|
| FOURTEEN | 04/15/2019 to 05/08/2019 | Name of A.S. | COUNT FOUR |
| FIFTEEN | 06/19/2019 to 06/25/2019 | Name of D.C. | COUNT FIVE |

15

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of defendant SHRAY GOEL's conviction on the offenses set forth in any of Counts One through Fifteen of this Indictment.

2. Defendant GOEL, if so convicted, shall forfeit to the United States of America the following:

   a. All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

   b. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant GOEL, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of defendant GOEL, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has

//
//

been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

                                                A TRUE BILL

                                                _____/S/_____
                                                Foreperson

E. MARTIN ESTRADA
United States Attorney

*/s/ Mack E. Jenkins*

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEN
Assistant United States Attorney
Chief, Major Frauds Section

SCOTT PAETTY
Assistant United States Attorney
Deputy Chief, Major Frauds Section

KERRY L. QUINN
Assistant United States Attorney
Major Frauds Section